[Civ. No. 14245. First Dist., Div. One. May 20, 1950.]

L. C. JENSEN, Appellant, v. UNION PAVING COMPANY (a Corporation), Respondent.

Mathew Weber for Appellant.

Henry F. Wrigley for Respondent.

BRAY, J.—In an action for breach of an alleged oral contract, the superior court rendered judgment that plaintiff take nothing. Plaintiff appealed.

## QUESTION PRESENTED

Plaintiff recognizes the well established rule that all reasonable inferences are to be indulged in support of the judgment and that, in order to reverse it, this court must hold that there is no substantial evidence to support the judgment. Plaintiff contends that there is no such evidence in this case. There is no merit to this appeal. In his opening brief, plaintiff quotes merely the evidence favorable to his contention, completely ignoring the defendant's evidence and the inferences which the court had the right to draw from the inconsistencies in the plaintiff's own testimony, and the fact that the court had the right to disbelieve plaintiff.

## EVIDENCE

Plaintiff's entire claim of a contract with defendant is based upon alleged conversations with one Corson who was defendant's general superintendent in charge of all its construction work in question here. Corson died prior to the filing of the complaint in this action, and hence his version of the conversations was unobtainable. Plaintiff's testimony follows: About January 28, 1947, Corson asked him to submit a price for the installing of sewers and drains on what was called the "Yew Avenue job." The pipe for the job had been ordered by defendant and was on the ground at that time. On January 30 plaintiff gave his written bid to Corson in the defendant's San Carlos office. Corson said he would "take it under advisement. He would check it over." On February 11, Corson told plaintiff his "prices were o. k.," and he could start on the job, and asked him how soon he could start. Plaintiff told him within a week. Plaintiff had no further conversation with Corson about the job except that on one occasion, probably around the 14th or 15th of February, Corson asked plaintiff if he knew anything about any of the pipe disappearing "up there." Plaintiff said he did not. On February 17, plaintiff learned that Corson had given the job to one Jarvis, and yet did not discuss the matter with Corson. On cross-examination plaintiff reiterated that he had not talked to Corson or anyone else about the job prior to his talk with Corson on January 28; yet he admitted giving Corson a bid dated January 25, which differed from the copy of the bid which he said he gave Corson on January 30 in that it contained a provision for progress payments and a space for acceptance, neither of which were on the January 30 bid. The bid dated January 25 was stamped "Feb 20 1947" which

was admittedly the date it was received in defendant's San Francisco office. Plaintiff was further confused by pencil changes of the typed cost figures on the bid dated January 25. At first he was not sure whether he or defendant made the changes, and then stated that they could be his handwriting.

Plaintiff then called Jarvis to whom Corson on February 18 had awarded a contract to do the work, as his bid was lower than plaintiff's. He testified that he had submitted a written bid to Corson at San Carlos on February 3. This bid was also stamped "Feb 20 1947" evidently the time it was received in defendant's San Francisco office.

Plaintiff's last witness was one Telfer, a former employee of defendant, who at the time in question worked in defendant's San Carlos office. He testified that between the early part of January and March 4, 1947, he heard a conversation between plaintiff and Corson about the Yew Avenue job; that plaintiff submitted a paper to Corson who said, "Well, those prices look all right. The job is yours," or words to that effect. (Plaintiff had testified that when he handed his bid to Corson, the latter had said he would take it under advisement and check it over.) Telfer never heard Corson say he would take plaintiff's bid under advisement.

Defendant called Joseph A. Dowling, defendant's president, who testified that at no time did plaintiff, other than by producing the bid, ever make an offer to do any of the work, nor did he ever move any equipment to the job.

Defendant's next witness was Frank Dowling, who was Corson's assistant. He testified that approximately February 11 or 12, "around there," he questioned plaintiff about some sewer pipe which was missing, and asked plaintiff if he knew where it might be or who might have taken it. Plaintiff said he did not, and that was the only subject they talked about.

Plaintiff had the burden of proving the existence of the oral contract on which he relied. A reasonable inference from all the evidence is that plaintiff submitted two bids; that prior to Corson's alleged acceptance of plaintiff's second bid, Jarvis had submitted a lower bid; that Corson, with a lower bid in his possession, would not orally accept plaintiff's higher bid and then give Jarvis a written contract. In his discussion of the lost pipe with Frank Dowling, plaintiff gave no intimation that he claimed to have the contract to do the job. After learning on February 17 that Jarvis had been given a written contract to do the work, plaintiff did not discuss the matter with Corson, or, so far as the record shows,

with any other employee of the company. He made no effort to assert his rights until nine months after discovering that the work had been given to another and over five months after the death of Corson. He testified that on February 11 he had told Corson he could start the work within a week, and yet up to six days later when he learned that Jarvis had a contract, he had moved no equipment to the job or made any effort to start. His actions were hardly consistent with those of a man who has a contract to do a job and then learns that another has a later contract for the same work. All these were matters which the trial court had the right to, and evidently did consider, and were facts from which the court very well could, and did, draw the conclusion that plaintiff had not been given an oral contract by Corson. There is substantial evidence to support the court's finding that no such contract was entered into.

Moreover, the trial court was not necessarily required to believe plaintiff and his witness Telfer, even assuming that their evidence was uncontradicted. ''Uncontradicted evidence is not necessarily binding on the court or a jury, but may be disbelieved where it is inherently improbable, or inconsistent with the facts and circumstances in evidence.'' (*MacDiarmid* v. *McDevitt*, 97 Cal.App. 414, 418 [275 P. 500].) As said in *Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689] : ''It is common knowledge among judges and lawyers that many cases are determined to the entire satisfaction of trial judges or juries, on their factual issues, by evidence which is overwhelming in its persuasiveness but which may appear relatively unsubstantial—if it can be reflected at all—in a phonographic record. Appellate courts, therefore, if there be any reasonable doubt as to the sufficiency of the evidence to sustain a finding, should resolve that doubt in favor of the finding; and in searching the record and exploring the inferences which may arise from what is found there, to discover whether such doubt or conflict exists, the court should be realistic and practical.'' (Pp. 223-4; see, also, *Estate of Teel*, 25 Cal.2d 520, 526 [154 P.2d 384].)

Judgment affirmed.

Peters, P. J., and Schottky, J. pro tem., concurred.